Thank you. Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant Paul Turner, and I'm going to try to reserve a few minutes of my time for rebuttal. Mr. Turner claims in this appeal that the juror's observation of a spectator improperly directing a witness's testimony violated his rights to a fair trial, confrontation, presented defense, effective assistance of counsel, and due process of law. In this case, Mr. Turner was charged with attempted carjacking and discharge of a firearm. At trial, no witnesses identified him as the shooter. The key witness against him was the victim, Tilford Smith. Law enforcement officer Dominguez testified at trial that the victim, Smith, had identified Petitioner in a photo lineup at the hospital immediately after the shooting two years earlier. During trial, Smith testified he was unable to identify Petitioner and did not remember identifying Petitioner during the hospital photo lineup. He testified that when he was in the hospital, he was drunk, in pain, angry, and suffering from substantial blood loss. I think we know the facts here, and since you don't have a lot of time, I have concerns about this case as a former trial judge from the standpoint, you know, as a judge, you're looking out, usually. The attorneys have their backs to everyone, and, you know, in every trial, it's a public courtroom, so you have to let people in unless they're excluded as a witness, and every trial has families of the defendant, has families of the alleged victims, any number of things, and these are like human beings, and they make facial expressions, and so I'm really concerned in looking at this in the big sense of, if I had been the judge here, and I saw someone making, you know, some obvious signs, and I thought they were communicating with a witness, I would have called a counsel to the bench. I would have immediately said that, but on the other hand, all of us are doing different things during a trial. We're listening to witnesses. We're trying to, and so this comes out after when everyone's talking, so I'm really, you know, I don't know what's clearly established about something where people, every court, every trial is going to have people sitting in the audience. Every trial is going to have human beings in there, and I agree that, obviously, people jumping up and screaming and doing certain things, but to mask expressions that no one even sees sometimes during the trial, I'm really concerned about whatever rule comes out of this, and I'm really having a hard time finding something that says, because someone in the audience that no one sees while it's going on is, you know, is it extrinsic? Is it intrinsic evidence? What is it? Thank you, Your Honor. I think it's clearly extrinsic. It's something relating to the trial itself, but it's outside the evidence, and the rule here is clearly established Supreme Court precedent that the jury has to decide the case based upon the evidence. What do we do about Kerry v. Mussolini? Because we're ultimately talking about spectator conduct, and Kerry v. Mussolini seemed to me most closely on point where they said there's never been a rule that spectator conduct can be inherently prejudicial. So aren't we bound by Kerry v. Mussolini on spectator conduct? On spectator misconduct, yes, but in this case, we're focusing… Well, this was a spectator, right? Yes. Who was engaging in some conduct, and in Mussolini, it was family of the victims wearing the buttons with the picture and et cetera, and the court said no clearly established Supreme Court law. Has there been anything after Kerry v. Mussolini in saying that spectator conduct could be prejudicial in this way? No, we're not relying on the spectator misconduct because in this case, we're focusing on jury misconduct. Focus on the question. Okay. Has there been anything… No. …since then that speaks to the issue of a juror reaction to something that happens in the courtroom but not from the witness stand? No, and I think in Kerry… Not a problem. Well, I think not. Kerry makes the point that if there isn't Supreme Court precedent that's close enough, there's no place to go. There's nothing you can say that the state court opinion was not sufficiently consistent with. Isn't that the case here? No, I understand it, but in this case, we're focusing on the jury reaction, and Kerry, I think it was… Same problem. What's the closest Supreme Court case you can give me that speaks to the issue in the way that you're trying to frame it? Well, the Maddox case that was relied upon by this court last week in the Durango case. That was outside of the courtroom with the government agent contacting or following one of the jurors, and so the focus of that Durango case was on outside government contact with the jury. This is about inside the courtroom spectator conduct that's observed by the jury, so it seems closest to Kerry v. Musladeen where it was spectator conduct, and there the court said state conduct, shackling the defendant is one thing, but spectator conduct, we don't have a case on point. No, I agree, and so we're focusing on the jury misconduct issue, because in this case the jury took that spectator misconduct, and we don't know if the spectator was, in fact, engaging in misconduct because we don't know what the spectator was doing. It's the focus on the jury taking that… That doesn't change anything because nobody really cares what the spectator's doing but for the impact on the jury. The buttons in Kerry, you could protest all you want outside the courtroom. The question is when you bring it inside the courtroom, does that have an impact on the jury that's corrosive? The Supreme Court doesn't answer that question. It says we don't have a case that speaks to us, so the state court decision can't be unreasonable. Why doesn't that apply here just as much? Because what we're focusing on is the jury's interpretation. Stop, stop. I just told you that we don't care about the spectator's conduct. We care about the spectator's conduct as it affects the jury. How is this case different from that? Because the jury interpreted that conduct as affecting the testimony of the key prosecution witness. And the concern in Kerry is that the jury is going to interpret the conduct and decide we better convict this guy because all these spectators are telling us what a horrible person he is. But this was something that related to, internally, the testimony of a key prosecution witness. And what Supreme Court case makes that distinction meaningful? Well, the Supreme Court case Maddox, and I wasn't relying upon Tarango, but Tarango relies upon Maddox. Maddox talks about the effect of extrinsic evidence in the jury. In that case, it was a newspaper article. And so we're analogizing to those cases where the jury considers something that's not in evidence and it affects their view of the evidence. Well, the spectator conduct cases that Casey distinguishes are those where the state does something that makes it seem like the defendant is particularly dangerous. And the concern is that the jury would interpret the state's conduct in the courtroom as an indication that the defendant must be guilty because he is so dangerous he needs to be shackled or have extra guards or whatever it is. So there the court said, well, state conduct is one thing and its effect on the jury, but we don't have anything for spectator conduct. So I don't see how the cases that you're citing, which are outside evidence or whatever, you know, bringing the Bible into the courtroom or whatever it is, has anything to do with the spectator conduct case where Kerry v. Musladeen seems directly on point. Because what we're focusing on is the line of Supreme Court authority that says the jury is limited to the evidence that's presented on the witness stand. Didn't that line exist at the time of Kerry? Yes. The Supreme Court said the fact that there may be an impact on the jury because of spectators wearing buttons does not bring this into the line of cases that speaks about newspaper articles outside. Same kind of thing, outside information going to the jury. I understand. I think there are two separate lines of Supreme Court authority with regard to juries. There's the jury misconduct and then the jury tampering. And I think the cases like Kerry and like Tarango go more to jury tampering and outside influence on the jury, not necessarily extrinsic evidence that bears upon the issues inherent in the trial. And that's what we're focusing on in this case. And I think I've only got two minutes left, so may I reserve time for rebuttal unless there are questions? Thank you. Morning. Good morning, Your Honors. May it please the Court. My name is Joy Utomi. I'm the California Deputy Attorney General on behalf of Respondent Pelley. There is no clearly established federal law as determined by the Supreme Court that holds that a jury's casual observation of a spectator shaking their head or nodding their head at trial constitutes a violation of that defendant's right to a fair trial. And the Kerry v. Musladeen case is directly on point. In that case, as the Court noted, there were spectators in the trial that were wearing buttons with the victim's image. As they were sitting in open court, the jury obviously would view that and see that they were wearing those buttons. Let's say, what if the spectator, and this isn't so off the, I'm going to make some motions. If the spectator's out there, there's a witness testifying, and the spectator's out there and makes like a gun with a finger and puts it to the head, or the spectator goes like slice across the throat. Isn't that a little problematic? That could be more problematic, and that would be a different case. Well, is that clearly established? What is that? It's not coming from the witness stand. I guess you could say it could be witness intimidation, but by the same token, if someone's shaking their head. I mean, I see people out there, and I've told people sometimes, knock it off or you're going outside because you don't want that sort of thing going on. But it isn't really evidence, but it certainly can have an effect on people that are on the stand. It could, and I think that would still be a different case from what we have in Cary and what we have here. And the reason the facts in Cary are so close to the facts here is because we have this very ambiguous conduct or behavior where it's a head nod versus a head shake, or maybe it was someone crying or scoffing or whatever it may be, or somebody wearing a button. That's a very different type of conduct. It speaks more directly to the evidence in the sense that, when I look at the case that the state put on, and simply viewed from what happened from the witness stand, it's an unusually thin case in that the key witness against defendant is busy saying he's not a witness against the defendant, he doesn't remember, and so forth. The key evidence here turns out to be what the officer says that witness said sometime before, based largely on a photo lineup. Not a lot of, almost no direct testimony against defendant in the courtroom. The officer can't offer his own evidence. He's simply relating what the witness is now denying anything. The Cary buttons are a little different. That's trying to bring outside influence, but is not speaking to the facts of the case. In this case, if in fact jurors noticed the mother gesturing in such a way as to basically give strength, to bolster the prosecution's argument that the only reason the key witness isn't testifying is because of this outside factor, so don't believe what he says today, believe what he said to the officer some time ago. That does speak very directly to what it is the jurors are supposed to think about. They're taking it into account. Doesn't that trouble us? No, because there was compelling evidence as to the defendant's guilt in this case. What? The officer testified, which was admissible in California courts, as a prior inconsistent statement that the witness... There's evidence, but compelling's going a little far. As a prosecutor, it's not a happy day when your witness recounts on you. Definitely not. Then you have to impeach them with their prior statements made near the point of time. Someone making those motions, it is like Judge Clifton said, it plays right into the hand of the prosecutor that this witness is being intimidated. That's why he recanted his story. And there's the person sitting right out there doing it in front of the jury, but unfortunately the judge doesn't see it, the lawyers don't see it, no one sees it. But it's like, yeah, he is being intimidated. That's why he recanted his story, and that's why the other one's true. Therefore, the prosecutor's right. At least first as to the evidence, the officer did testify as to the victim's prior statement, and the strength of that identification that he made just two hours after the incident was strong. He stated to the officer, I'm 100% sure that it was this person, that it was Mr. Turner. He identified his skin tone, he identified his style of hair, he identified the type of shirt that he was wearing, and identified him and picked him out of a six-person lineup, a photo lineup. So the strength of that evidence was before the jury, and the jury can consider that evidence. Where was the defendant found? Was he found in proximity, or was he found, wasn't there something, there was a description of a firebird, and he was found in a firebird or something like that? Yes, there was a description as to his car. It was a red firebird. The victim, Tilford Smith, testified as to the type of car and the color, and there was another witness that also testified, and he was subsequently found with his car. So does any of this really matter? I mean, we're reviewing the California Court of Appeals decision. We can't grant the petition unless we say that decision was contrary to clearly established Supreme Court precedent that's closely on point. Correct, and there is no, as stated by the Supreme Court in Kerry, there is no Supreme Court law that is on point that says that a spectator's conduct constitutes misconduct for purposes of a defendant having a fair trial. It simply isn't there. This court in Tarango held similarly, saying that there is no bright-line test as to what constitutes extrinsic evidence. How about Maddox in cases about evidence outside of the jury room, such as newspapers and the like? Is this distinguishable? Is this situation distinguishable from that? Completely. In Maddox, the court was dealing more with jury tampering. The jury, they were given a newspaper that had substantive information as to the defendant's guilt, commented on the strength of the evidence, commented that the community was just waiting for a guilty verdict, and also revealed to the jury, which was not previously known to the jury, that the defendant in that case had been previously tried for some offense for which they were facing life in prison. All of that information was contained within the newspaper and was given to the jury during their deliberations. That's completely different from what we have here, where this is something that happened in open court. Some juries casually saw this person nod. Within the stipulation, they didn't say that it affected their deliberations. They simply stated that they believed this person might be the victim's mother and that she also might be directing him to testify the way he was testifying. That's completely different from Maddox and the line of cases Appellant has cited in her briefing, where there's a deliberate communication, where there's private third-party communication with the jury and a third party, or where there's any other type of communication that's directed at affecting the jury's verdict. Here, where the jury is viewing a spectator's behavior, a spectator's conduct, just as they would view somebody in the trial that's coughing or crying or reacting in disbelief, that does not constitute misconduct, and Kerry is absolutely on point as to the effect of a spectator's actions. And I did want to speak a little bit to the issue of prejudice, that even if we were to get to the issue of prejudice and consider this as extrinsic, there was no prejudice in this case. Here, again, we have the prior testimony as brought through the officer as to the victim's identification. We have the other witnesses who testified generally as to the characteristics of the defendants, the skin color. What are the characteristics that you think critically identify the defendant? The witnesses identified him as a black man that was mixed. I think both of them identified him as having a Mexican mix or some sort of Latino mix, and they identified him as having braids. And wearing a dark shirt? Yes. How many people in this area do you think fit that description? Here in Pasadena? Los Angeles. Maybe more so in greater Los Angeles, but at least within the photo lineup that they were. . . Was it a cross-racial identification? No, it wasn't. The victim in this case was African American, and the photo lineup that he was given had six people that shared these same characteristics, and he was able to identify and state that he was 100 percent sure that it was this person that shot him twice. Did he claim he had seen this person before the incident in the restaurant? Yes, yes. So his identification was based on what he saw at the time of the attempted carjacking, but also what was his statement to the officer about how long he had had an opportunity to observe the individual? His statement to the officer was that he casually saw him within the restaurant that they were in, so he recognized him as when this person was approaching him. I see my time has expired, and may I briefly answer your question? Yes. So he testified that he casually saw him before, but that he identified him from being the person that came up to him, asked him for his keys, and then there was a struggle. He punched him. The person, the defendant, Mr. Turner in this case, shot him two times. That was the testimony he gave. Unless this Court has any questions, I'm prepared to submit. Thank you. Thank you. Ms. Young? Thank you. I just briefly wanted to respond to a few things. One is that there's no case that exactly has these facts. I think that the controlling Supreme Court precedent that a case has to be based on the evidence presented from the witness stand is controlling here. I guess I don't want to, you know, that my natural cross-examination comes out when you say, well, there's no case that has these facts, and I'm kind of, I'm jumping right to, so you're arguing against yourself in that there's no clearly established precedent. No, I'm saying that in the case the – You can't define it too generally. No. And so this is different, so I, you know – No, but I discussed it in the brief. I think it's the Alvarado case that says where the rule is very specific, the range of cases are narrow. Here it's a specific rule. The jury has to rely on the evidence at trial. The jury cannot rely on extrinsic evidence, and that's a constitutional guarantee because that's invested in the right of confrontation, the right of cross-examination, the right to counsel, all those things in here in the right that the jury's verdict be based on the evidence at trial, and that was violated here. I just also wanted to say that the jury declaration said that this incident affected their assessment of Mr. Smith's credibility, so it was indeed serious, and that also the identification, the prosecutor talked about the elements of the identification of Mr. Turner. Those elements, he was the only one in the lineup. His picture was the only one in the lineup that had all those elements, and therefore the lineup was suggestive, which was another reason why the evidence against him was not compelling. So unless there are any further questions, I'll rest. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Callahan, Ikuta